## HOOKS v. ALDRIDGE.

### (Circuit Court of Appeals, Fifth Circuit. May 30, 1906.)

### No. 1,524.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVER FOR COR-
PORATION.

The president of a corporation instituted a suit against it in a state
court, the purpose of which was to have it wound up. The petition alleged
that it was largely indebted to plaintiff and to others, that it was unable
to meet its liabilities or to carry on its business, and was in "imminent
danger of insolvency," and, in general, that it was in a failing condition. A
statement was made that its assets slightly exceeded its liabilities, and the
appointment of a receiver was prayed for and granted. By an amended
petition it was alleged that the property of the company when the suit
was begun was insufficient to pay the indebtedness to plaintiff. Held,
that the facts warranted a finding by a referee in bankruptcy that the
receiver was appointed because of the insolvency of the company, and
constituted an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541,
§ 3 (4), 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], as amended by Act
Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683].

2. SAME—DUTY OF RECEIVER TO SURRENDER PROPERTY TO TRUSTEE.

When a corporation is adjudged a bankrupt on the ground, among oth-
ers, that a receiver was put in charge of its property by a state court be-
cause of its insolvency, such receiver is not entitled to retain possession
of and administer its property, but the same should be surrendered to the
trustee in bankruptcy.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 237.]

Petition for Revision of Proceedings of the District Court of the
United States for the Eastern District of Texas.

Stuart R. Smith (Smith, Crawford & Sonfield, on the brief), for
petitioner.

Eugene Easterling (Greers & Nall, on the brief), for respondent.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. The questions involved in this case re-
late to a conflict of jurisdiction between the District Court of the
Fifty-Eighth Judicial District of Texas, hereafter called the "State
Court," and the United States District Court for the Eastern Dis-
trict of Texas, hereafter called the "Bankruptcy Court." The con-
troversy is between J. B. Hooks, as receiver, appointed by the state
court, and W. H. Aldridge, as trustee, appointed by the bankruptcy
court, as to the right to the possession of the property of the Turner
& Nabers Lumber Company, hereafter called the "Lumber Com-
pany," a corporation engaged in the manufacture and sale of lum-
ber. The litigation was begun in the state court on October 1, 1903,
by W. H. Turner, who filed his petition against the lumber com-
pany. It was alleged in the petition that the stock of the lumber
company consisted of $50,000, divided into 500 shares of $100 each,
and that the plaintiff was the owner of 150 shares, of the par value
of $15,500. The petitioner alleged that the defendant company was
indebted to him in the sum of $5,633.51 for money advanced to the
defendant, and that this sum was due and owing the petitioner. It

145 F.—55

was also alleged that the plaintiff was the owner and holder of the first mortgage 10 year 6 per cent. gold bonds of the defendant to the amount of $20,000, dated August 14, 1903, and maturing August 13, 1913, bearing interest at 6 per cent. per annum; the bonds being secured by a deed of trust executed by the defendant on all of its property of every kind. It was also alleged that the petitioner was liable as the indorser of the paper of the defendant company to the amount of $7,500, which petitioner would have to pay. The petition contained elaborate averments of the financial embarrassment of the lumber company, that it owed a large number of past-due accounts to creditors, who were insisting on payment, and that the company was unable to pay, and that the creditors were about to institute, and were threatening to institute, suits for the payment of the same, and were about to file a large number of separate suits and proceedings against the lumber company, and that its board of directors could not further carry on and prosecute its business. In relation to the solvency of the lumber company, the following averments were made: "The defendant corporation is now in imminent danger of insolvency, that its assets amounted to approximately $80,000, and that its liabilities amounted to approximately $78,000," and that the corporation is and will be unable to realize from its assets a sufficient sum of money to meet said liabilities as they mature. Subsequently, on July 23, 1904, these averments as to solvency were amended by the addition or substitution of the following statement:

"And plaintiff further shows that said property [referring to all the property of the corporation] is of insufficient value, and was at the time of the filing of this suit, to secure and pay the costs of this proceeding and plaintiff's said debt."

It was alleged, further, that the plaintiff, as a stockholder and for the benefit of all the stockholders of the corporation, was entitled to have the business of the "corporation wound up, and the value of its assets realized and applied, first, to the payment of the creditors as their priority appeared, and thereafter to the stockholders." The petition concluded with a prayer for the appointment of a receiver for the lumber company of and for all its property wherever situated, and that the court should enter an order granting the usual power to wind up and liquidate the said business, and there was also a prayer for judgment for the indebtedness in favor of the petitioner, and that the lien of the plaintiff be established and foreclosed. On the same day (October 1, 1903) the state court made an order appointing J. B. Hooks receiver, as prayed for. The order authorized Hooks to take possession of all of the defendant company's property, and to continue the operation of the saw mills and other business of the defendant company for the purpose of placing the property and estates of the defendant in a marketable condition. It further ordered that all persons having debts against the corporation should intervene in the suit for the establishment and collection thereof, and creditors were enjoined from proceeding otherwise. The court in its decree did not state the grounds on which the appointment of the

receiver was made. On the next day Hooks gave bond and qualified as receiver. On October 5, 1903, four days after the beginning of the suit in the state court, three of the creditors of the lumber company filed a petition in involuntary bankruptcy in the bankruptcy court, praying that the lumber company be adjudged a bankrupt. The acts of bankruptcy alleged were: (1) That within four months preceding the filing of the petition, J. B. Hooks, a receiver, was appointed by the state court, and put in charge of the lumber company's property under the laws of the state of Texas, because of insolvency; and (2) that said lumber company within four months preceding the filing of the petition, while insolvent, committed a further act of bankruptcy, in that it transferred a portion of its property to one or more of its creditors, with intent to prefer such creditors over its other creditors. On May 26, 1904, the lumber company was adjudged a bankrupt, and on July 6, 1904, W. H. Aldridge was appointed trustee of the estate and effects of said bankrupt. On July 23, 1904, W. H. Turner filed in the state court his amended petition, restating his ownership of the $20,000 in bonds and the execution of the deed of trust, and alleging that, prior to the filing of the suit, the corporation had violated the conditions and obligations contained in the bond and in the deed of trust given to secure the same, and prayed a foreclosure of his lien and a continuance of the receivership pending the same. In this amended petition he alleged the appointment of Aldridge as trustee in bankruptcy, and that Aldridge was asserting some claim by virtue of his trusteeship to the property, and prayed that Aldridge, as such trustee, be made a party defendant, and that his rights to the property, if any, be adjudicated. Aldridge had notice of this amended petition September 20, 1904. On August 16, 1904, Aldridge, as trustee in bankruptcy, filed a motion in the suit in the state court asserting his claim to the possession of the property in the hands of Hooks as receiver, and praying for an order requiring the receiver to turn the property over to him as trustee. This motion was duly heard by the state court, which entered a judgment overruling the same. The motion of Aldridge as trustee in bankruptcy having been overruled by the state court, he, on October 3, 1904, filed with the referee in bankruptcy an application for an order to Hooks, receiver in the state court, to show cause why he should not be required to turn over the property of the lumber company to him as trustee. Upon a hearing the referee entered an order requiring Hooks, as receiver in the state court, to turn over the property to Aldridge, as trustee in bankruptcy. The referee based his order on a finding of facts practically as heretofore stated, and that the receiver in the state court for the lumber company "was appointed because of its insolvency." Hooks thereupon filed a petition in the bankruptcy court to review the order of the referee in bankruptcy, and on April 20, 1905, the bankruptcy court sustained the finding of the referee, and affirmed and repeated his order requiring Hooks to turn over the property of the lumber company held by him as receiver in the state court to Aldridge, trustee in bankruptcy. The case is brought to this court by a petition filed here by Hooks as

receiver, seeking to reverse and annul the order of the bankruptcy court requiring him to surrender the property to Aldridge, as trustee.

The question first demanding attention is the character and purpose of the suit in which the state court appointed Hooks receiver. The contention of the receiver is that it was essentially a suit to foreclose the deed of trust and to collect the $20,000 of bonds issued by the lumber company. We cannot accept that construction of the petition. It was filed by Turner, the president of the company, and alleged that he was a stockholder, and its leading purpose was to wind up the corporation. It sought a sale and distribution of all its assets. Its clear purpose was, not only to secure the payment of the debts due to the petitioner, but to have all other debts of the company adjusted and settled. The decree appointing the receiver pointed to that purpose. It is true that the amended petition, filed after the bankruptcy proceedings were begun, sought to narrow the issues to the foreclosure of the deed of trust, but that was sought on an averment that all of the lumber company's property was not sufficient to pay the petitioner's debt and costs.

One of the questions controverted at the bar is whether or not the receiver was appointed by the state court because of the insolvency of the lumber company. The materiality of this question will be seen later. A person or corporation is deemed insolvent whenever the aggregate of his or its property, exclusive of property fraudulently concealed or transferred, shall not, at a fair valuation, be sufficient in amount to pay his or its debts. Bankr. Act July 1, 1898, c. 541, § 1, subd. 15, 30 Stat. 544, 545 [U. S. Comp. St. 1901, p. 3421]. The original petition seeking the appointment of the receiver did not specifically allege insolvency. Inability on the part of the corporation to pay its debts or to carry on its business was alleged. In every line of the petition it appears that the corporation was a failing concern, and it is averred that it is "now in imminent danger of insolvency." The petition contained, however, the averment that the corporation's assets amount to "approximately $80,000," and its liabilities amount to "approximately $78,000," and this averment is now relied on by the receiver to show that he was not appointed on account of the insolvency of the corporation. But later an amended petition was filed, which alleged that the corporation's property "is of insufficient value, and was at the time of filing this suit, to secure and pay the costs of this proceeding and plaintiff's said debt." The plaintiff's entire debt, including the bonds and the account, amounted to $25,633.51. The entire indebtedness being approximately $78,000, according to this averment the indebtedness exceeded the assets by $52,366.49. We cannot, therefore, avoid the conclusion that the petition and the amended petition filed in the state court in the suit in which the receiver was appointed show the insolvency of the lumber company. It is true that the decree appointing the receiver does not recite that the appointment was because of the insolvency of the corporation, but, construing the decree in the light of the entire record from the state court, we conclude, in the absence of all other evidence on the subject, that the insolvency of the company was at

least one of the causes or grounds upon which the court acted in making the appointment. But if this conclusion could not be reached by an examination of the record from the state court, as that record does not show affirmatively that the appointment was made on other grounds, we would be bound by the finding of facts by the referee in bankruptcy, on which the order of the court of bankruptcy is based. The referee found that "because of insolvency" the receiver was appointed. One of the grounds on which the court of bankruptcy adjudged the lumber company a bankrupt was that the state court had, because of the insolvency of the company, appointed Hooks receiver of the company's property, and placed him in charge of it.

Section 3, subd. 4, Bankr. Act 1898 [U. S. Comp. St. 1901, p. 3423], made it an act of bankruptcy for a person or corporation to make a general assignment for the benefit of his or its creditors. The amendment of 1903 added to this subdivision two other grounds or acts of bankruptcy:

"Or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States." Act Feb. 5, 1903, c. 487, 32 U. S. Stat. 797, § 2 [U. S. Comp. St. Supp. 1905, p. 683].

We have before us a record showing that a state court, because of insolvency, appointed a receiver for a corporation and placed him in possession of its property, and that thereupon, and on that ground, among others, the court of bankruptcy adjudged the corporation a bankrupt, pursuant to the amendment we have quoted. In enacting these additional grounds of involuntary bankruptcy, it could not have been the intention of Congress that the receiver of the state court, appointed "because of the insolvency" of the corporation, should continue to hold possession of the property and to administer and settle the estate. The Supreme Court observed in a recent case that "the operation of the bankruptcy laws of the United States cannot be defeated by insolvent corporations applying to be wound up under state statutes" (In re Watts & Sachs, 190 U. S. 1, 27, 23 Sup. Ct. 718, 47 L. Ed. 933); nor can they be defeated by the appointment of receivers, because of insolvency, at the suits of their officers, stockholders, or creditors.

The bankruptcy court pursued the practice that we heretofore approved in directing the trustee to apply to the state court for an order on its receiver to surrender the possession of the property. Carling v. Seymour Lumber Co., 113 Fed. 483, 51 C. C. A. 1.

It is the duty of both the federal and state courts to observe every precaution to avoid unseemly conflict of jurisdiction. It is for this reason, on principles of comity, that the application is made in the first instance, in a case like this, to the state court for directions to its receiver to surrender the property. The laws of the United States are equally binding on both federal and state courts, and it cannot be taken for granted that either will fail to be governed by them. But when a state court refuses to direct a surrender of the property, and the federal court to which application is then made is of opinion that it should be surrendered, what is to be done? In such cases it is

said that, under the rules of comity, the possession of the property by the state court should not be interfered with without its consent; that the decision of the state court not to surrender the property is controlling till it is reversed; that parties objecting to it should reserve the federal question, and obtain relief by appeal or writ of error, and finally by application to the United States Supreme Court if necessary. It is true that relief from an erroneous ruling on a federal question of even the highest state court could be finally corrected in that way, and in the meantime that process of injunction might be used to restrain the parties from a distribution of the assets in the state court (Rev. St. U. S. § 720 [U. S. Comp. St. 1901, p. 581]) till the final decision was obtained in the Supreme Court. On the other hand, we must not forget that the proceeding suggested would result in great delay, and that the jurisdiction and authority of the bankruptcy court is paramount, the bankruptcy law superseding all state insolvency laws; that its purpose to obtain a speedy and equal distribution of the bankrupt's assets will be defeated if the supremacy of the federal court's orders be not promptly recognized and enforced.

While it ,is unquestionable that the federal courts are the final arbiters to settle questions arising under the bankruptcy laws, there are questions relating to comity and procedure, in the event of conflict of opinion between the state courts and the bankruptcy courts as to the possession of the bankrupt's assets, which remain unsettled by decision of the Supreme Court. Whether the bankruptcy court should make such orders as will preserve the estate, and await the final result of the litigation in the state court, or should act on its own opinion of the want of jurisdiction of the state court, and enforce its order to secure the possession of the property, is one of the questions left unsettled, so far as we are advised, by a decision of the Supreme Court. At a proper time the federal courts, of course, may decree the enforcement of the supremacy of the Constitution and laws of the United States, for it is an "incontrovertible principle that the government of the United States may, by means of physical force, exercised through its official agents, execute on every foot of American soil the powers and functions that belong to it." Ex parte Siebold, 100 U. S. 371, 395, 25 L. Ed. 717. But it is, without doubt, the duty of both the state and federal courts to exercise the greatest caution to avoid this necessity where it is possible. The orders of the state court and of the federal court in this case are in conflict, and, if each court was attempting to enforce its own order as to the possession of the property, it would lead to a resort to physical force on the part of the executive officers of the respective courts.

The condition of the record, so far as we have stated it, raises grave and difficult questions, which we find it unnecessary to decide, on account of subsequent proceedings in the state court and in the bankruptcy court.

We have ascertained by calling for additional records that by agreement of the parties, approved by the state court and the bankruptcy court, the property involved is to be sold by both the receiver and the trustee, and the proceeds placed in bank to await the decision of

this court as to who is entitled to the custody and control of the property. The following is an excerpt from the order of the state court, made since the petition for review was filed in this court:

"In the event it shall be finally adjudicated that the receiver is entitled to the custody and control of the property of the Turner & Nabers Lumber Company, the said receiver is to take in charge the said money so deposited. In the event it shall be finally adjudicated that the trustee in bankruptcy of the estate of the Turner & Nabers Lumber Company is entitled to the custody and control of the property of the Turner & Nabers Lumber Company, the receiver is hereby authorized to turn over the said funds to the said trustee in bankruptcy."

The referee in bankruptcy, on January 18, 1906, since the petition for review was filed herein, made an order ratifying the agreement between the receiver and the trustee, an excerpt of which is as follows:

"That the agreement between said trustee and the receiver of the state court with respect to the status of the funds arising from said sale be, and the same is hereby, approved, and said trustee, in connection with the receiver of the state court, shall deposit said funds in the bank to be agreed upon, to await the decision of the question as to the right to the possession of said property; and should it be decreed that the receiver of the state court is entitled to the property of the estate, the trustee shall relinquish his possession to the fund arising from the sale of the property."

We commend the course taken by the parties in making this agreement, and fully approve the action of the courts confirming the agreement by their orders.

In view of the fact that the record before us shows that the receiver in the state court was appointed "because of the insolvency" of the lumber company, and that the company was duly adjudicated a bankrupt on that account and on other grounds, we are of opinion that the estate should be administered in the court of bankruptcy; and for that purpose the assets should be placed in the possession of the trustee in bankruptcy. This may be done pursuant to the agreement of the parties and the order of the state court, which we have quoted.

The petition to revise and review is dismissed; the costs of the proceeding in the lower court and in this court to be paid out of the funds of the bankrupt's estate.