## In re ELECTRIC SUPPLY CO.

(District Court, S. D. Georgia, W. D. June 23, 1909.)

1. BANKRUPTCY (§ 60*)—ACT OF BANKRUPTCY—INSOLVENCY—APPLICATION FOR RECEIVER.

Where a corporation, through its president, applied to the state court for a receiver, and the application recited that the company's financial condition, owing to gross mismanagement of its officers, was such that it could not hope to continue business; that its credit was seriously impaired, if not wholly destroyed; that it was impossible to raise necessary capital to meet its matured and maturing obligations; that some of its notes, accounts, and other obligations were past due, and it was being threatened with suit, which must result in levies on and depletion of assets, from which its directors had concluded that it was essential to the preservation of the assets and to the safety and security of its creditors and stockholders that the company should surrender its franchises and dissolve the corporation, for which purpose it applied for a receiver, though its assets exceeded its liabilities exclusive of capital stock—it was insolvent, within Bankr. Act July 1, 1898, c. 541, § 1(15), 30 Stat. 544 (U. S. Comp. St. 1901, p. 3419), declaring that a person shall be deemed insolvent within the act whenever his aggregate property, exclusive of property conveyed, etc., shall not be sufficient in amount to pay his debts, and hence such application, followed by the appointment of a receiver, was an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*]

2. CORPORATIONS (§ 609*)—DISSOLUTION—EQUITY JURISDICTION.

A state court of equity in Georgia has no jurisdiction to dissolve a corporation, and therefore cannot appoint a receiver and sequester its property, decree a sale of all its property and franchises, and a distribution of the fund arising from such sale among its creditors and stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2421; Dec. Dig. § 609.*]

3. BANKRUPTCY (§ 20*)—ACT OF BANKRUPTCY—STATE COURT—JURISDICTION.

Where a corporation applied to a state court for a receiver under a petition showing its insolvency, and that it could not longer continue in business, the state court's jurisdiction to appoint a receiver and administer the corporation's assets, invoked within four months prior to the filing of a petition in bankruptcy, if such jurisdiction existed at all, could not deprive the corporation's creditors of the right to have the corporation's assets administered under the bankruptcy law.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 20.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

In Bankruptcy. In the matter of the Electric Supply Company, bankrupt. Application for injunction and appointment of a receiver. Granted.

W. B. Stevens, for bankrupt.

O'Byrne, Hartridge & Wright, for petitioning creditors.

Talley & Heyward and Akerman & Akerman, for receiver and custodian.

SPEER, District Judge. The case before the court is an application for an injunction and the appointment of a receiver. The complainants are a number of corporations of several states holding claims against the Electric Supply Company of Savannah. They filed their petition for the adjudication of the latter company as a bankrupt on the 17th day of June, this year, and the act of bankruptcy they allege is "that within four months preceding the filing of this petition, viz., on the 20th day of February, A. D. 1909, the said Electric Supply Company committed an act of bankruptcy, in that it did, being insolvent, apply to the superior court of Chatham county, Ga., for a receiver for its property," and upon the 20th day of February, 1909, in pursuance of such application, a receiver was appointed by that court.

It is further alleged that the proceeding in bankruptcy is still pending, and will not be determined for some time, that the estate of the bankrupt consists of a stock of goods and fixtures in their store in Savannah and accounts receivable, and is worth substantially $10,000; that W. B. Davis, the receiver appointed by the superior court of Chatham county, is carrying on the business at a loss; that the assets of the bankrupt's estate are being rapidly disposed of; that a sale of the entire assets is now contemplated by the receiver; that the proceeds when sold will be distributed among the creditors by such receiver; and that the rights and priorities of the creditors will be determined according to the laws of the state of Georgia, and not according to the acts of Congress relating to bankruptcy. Complainants offer to file bond in such amount as may be required by the court and by the bankruptcy law.

On the ex parte application this court declined to appoint a receiver, but granted a temporary injunction, intended to restrain the receiver of the state court from altering the status of the property in a manner injurious to creditors. A rule nisi was granted calling upon the defendant to show cause why a receiver and the injunction prayed for should not be granted. This has been heard on bill and answer, and on certain statements of counsel made in judicio, which were not controverted.

The answer of the defendant recites that it has filed in this court a denial that it has committed an act of bankruptcy, and a denial of insolvency, and has set up in its denial that it should not be declared a bankrupt, and has demanded a jury trial. It alleges that, by a general balance sheet made out by the receiver, its total assets were $91,684.06, and its total liabilities were only $87,151.36. This statement is made up by the receiver of the state court, and does not include certain claims against the company, which it is insisted may be debatable. The respondent also alleges that the receiver, who was the president of the company alleged to be bankrupt, has been managing the property with great care, and since his appointment has made a

total net profit of $762.22 up to the month of June, and for the month of June the profits will not be less than $300. The necessity for the appointment of a receiver is denied for the reason that the assets are being handled economically and prudently by the receiver of the superior court of Chatham county. It is also denied that a sale of the entire assets of the company is contemplated, and it is contended that creditors who hold claims to the amount of $65,000 are content with the receivership of the state court. It is insisted that the injunction granted by the court is operating to the disadvantage and loss of the creditors, as it checks the receiver in the regular carrying on of the business, that he is under a bond to the state court, and denies the power of the United States court to take charge of the assets and property through its receiver. The answer claims that the proceeding in the superior court of Chatham county was not filed by an insolvent, but by a solvent, corporation, which desired to have its assets regularly administered to creditors and without priority or preference, and with a view of paying the debts, and saving whatever surplus there might be for the benefit of the stockholders.

There is no dispute as to the material facts in issue, and the controversy must be determined in view of the law and the necessary construction of the proceeding filed in the state court. This, as stated, was filed by the defendant company alleged to be bankrupt. It was sworn to by Wm. V. Davis, its president, who was appointed as receiver. It appeared, however, that the proceeding was instituted after conference with certain creditors, for there is appended to the bill a statement signed by U. H. McLaws, Adams & Adams, Garrard & Meldrim, local attorneys, representing certain local creditors, in which they "express approval of the action contemplated in the foregoing petition by the Electric Supply Company looking to the appointment of a receiver for the purpose expressed."

The petition of the state court indicates that on December 31, 1908, the financial condition of the company exceeded its liabilities, exclusive of capital stock, by $44,090.96. However, early in January, 1909, the then president of the company "departed this life," and the directors, having made a careful investigation and audit of the company's affairs and financial condition, "find that the company is not insolvent, but that its liabilities, exclusive of capital stock, amount to $81,292.91, and that its real assets, after eliminating all worthless items and appropriately discounting all doubtful items, are in excess of its liabilities, but insufficient to make unnecessary these proceedings."

The petition of the superior court further recites:

"That the financial condition of the company at the present time, owing to gross mismanagement of its affairs, is: (1) Such that it cannot hope to continue its business; its credit being seriously impaired, if not wholly destroyed, and it being impossible to raise the necessary capital with which to meet its matured and maturing obligations. That some of its promissory notes, accounts, and other obligations are past due, and it is being threatened with suit against it for the recovery thereof, which must result in levies upon and the depletion of its assets."

It further alleges that its directorate—

"has concluded that it is essential to the preservation of the assets of the company and to the safety and security of its creditors and stockholders that the company surrender its franchises, dissolve its corporation, and, to this end, that the equitable powers of this honorable court be invoked for the purpose of administering the assets of the company, through the court's receiver, under proper restrictions and under its direction, and for the payment, first, of the debts of the corporation, and, then, for equal distribution among its members."

It is further recited that:

"It will be highly beneficial to its creditors and stockholders to have it continue, pending the liquidation of its affairs, purchasing such materials and goods as may be useful in the sale of the stock now on hand or in the completion of contracts heretofore or hereafter made."

A receiver is prayed for, with authority to continue the business, and power to buy and sell materials and supplies in which it deals, to make contracts, collect indebtedness, etc., under such restrictions and limitations as may be established by the court.

A further prayer is that all persons having claims of any description against petitioner be required by order and judgment of the court to intervene and prove the same within such time as may be designated by the court, and that petitioner have leave to apply for a restraining order of the court against any independent action by any creditor or creditors. It is prayed that the receiver, as soon as practicable, convert the assets of petitioner into money, and that, after paying the expenses of administration, such fund be applied, first, to the payment of its debts, and, secondly, to distribution among its members or stockholders.

The bill was filed on the 20th of February, and on the same day, as stated, the president of the company alleged to be bankrupt was appointed the receiver.

In view of these solemn averments in the state court proceedings, it seems impossible to reach any conclusion save that the respondent company was at the time insolvent.

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be removed or concealed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Bankr. Act July 1, 1898, c. 541, § 1 (15), 30 Stat. 544 (U. S. Comp. St. 1901, p. 3419).

When, therefore, the defendant alleges that, owing to the gross mismanagement of its affairs, "its condition is such that it cannot hope to continue its business, that it is impossible to raise the necessary capital to meet its matured and maturing obligations, that its promissory notes, accounts, and other obligations are past due, that it is threatened with suits, which must result in levies and in the depletion of the assets," it is but an elaborate declaration that it has nothing sufficient to pay its debts. This condition is not mended by its prayer to the state court for leave to surrender its charter and to go out of business, to sell its properties as quickly as possible and turn them into cash, and to stand off through the injunctive power of the state court all persons having claims against it while this process of disintegration is going on. It is true that the alleged bankrupt, with some astucity, is careful to say that it is not insolvent. It is careful also to adopt

resolutions expressly denying insolvency. But the denial is unimportant in view of the recitals showing its utter incapacity to pay its debts. Indeed, the scheme of the bill, if effective, would create a special bankruptcy proceeding for the Electric Supply Company, not only lacking in that uniformity of operation required by the national law, but as restrictive in territory as it is peculiar and unique in other respects.

It is equally clear that the proceeding filed by the Electric Supply Company in the state court was an act of bankruptcy. The rule is clearly stated and discussed in the recent and very valuable work, Collier on Bankruptcy (7th Ed.) pp. 77–84. The conclusion of the author is expressed in the following language:

"The intention of the amendment of 1903 being clear, there would appear little doubt that any act, procedure, or process for the winding up of the insolvent corporations or copartnerships which substantially abridges or deprives creditors of the right to a trustee of their own choosing, or of the greater right to compel the prorating between all creditors of the same class, or any other right given them by the bankruptcy law, will, provided the alleged bankrupt is insolvent at the time of the commission of the act complained of and that act be within the four months' period, amount to an act of bankruptcy. The importance of this change cannot be overestimated."

This language is fully sustained by the authorities cited. Among these are In re Bennett Shoe Company (D. C.) 140 Fed. 687. The Bennett Case was singularly like the case at bar. Within four months preceding the date of the filing of the petition in bankruptcy the shoe company, it was alleged, committed an act of bankruptcy, in that it did by a written agreement of all of its stockholders make a general assignment to its directors, under the provisions of the statute law of the state of Connecticut regarding the dissolution of corporations, and did under the provisions of said statute create the directors of said corporation trustees to close up the business of said corporation for the benefit of its creditors. This was held by District Judge Platt to be an act of bankruptcy.

In the case of Beatty v. Andersen Coal Mining Company, 150 Fed. 293, 80 C. C. A. 181, where, as here, the appointment was by consent, and there were other grounds in the petition besides insolvency, Circuit Judge Putnam, for the court, declared:

"As the statutes of bankruptcy are to have an honest and practical interpretation, we are not to inject into what we have quoted therefrom such phraseology as would require that the cause of the receivership need be solely insolvency. If insolvency, either as a distinct ground of proceeding or as coupled with others, was one of the substantial reasons for the appointment of a receiver, the case would come within the reasonable construction of the statute."

It is true that in that case insolvency was distinctly alleged. Here, as we have seen, there is an attempt to deny it; but the averments of the Electric Supply Company, made in its petition to the superior court, sworn to by its president, and presented as a part of its answer here, so conclusively show insolvency that there can be no doubt that it was the true and substantial basis of the petition, and the court will not shut its eyes to the truth, notwithstanding the pleader's art may have been utilized to defeat the operation of the bankruptcy law.

If, however, there was any conflict in authority of other courts on this question, it would seem definitely resolved by the decision of the Circuit Court of Appeals of this the Fifth Circuit in the case of Hooks v. Aldridge, 145 Fed. 865, 76 C. C. A. 409. That case was decided by all of the Circuit Judges, and Judge Shelby pronounced the opinion. It is very like the case at bar. There the president of a corporation instituted a suit against it in a state court, the purpose of which was to have it wound up. The petition alleged that it was largely indebted to the plaintiff, and others, that it was unable to meet its liabilities, or to carry on its business, and was in imminent danger of insolvency, and, in general, that it was in a failing condition. There, as here, the statement was made that its assets slightly exceeded its liabilities. The appointment of a receiver was prayed for and granted. There, as here, there was a distinct failure or omission to allege insolvency; there, as here, inability of the corporation to pay its debts or carry on its business was alleged. In that case there was an amendment, in which it was alleged that the corporation's property is of "insufficient value, and was at the time of the filing of this suit, to pay the costs of this proceeding and plaintiff's said debt." Here the averment is that the financial condition of the company is such "that it cannot hope to continue its business, its credit being seriously impaired, if not wholly destroyed, and it being impossible to raise the necessary capital with which to meet its matured and maturing obligations; that some of its promissory notes, accounts, and other obligations are past due, and it is being threatened with suits against it for the recovery thereof, which must result in levies upon and the depletion of its assets." It appears, therefore, that the Electric Supply Company was more hopelessly moribund than the Turner & Nabors Lumber Company. But Judge Shelby declared:

"We cannot avoid the conclusion that the petition and amended petition filed in the state court in the suit on which the receiver was appointed showed the insolvency of the lumber company."

The court further held that this constituted an act of bankruptcy, and the representative of the bankrupt court was entitled to the possession of the bankruptcy assets in the hands of the state court receiver. It also indicated a method to secure the possession of such assets with due respect to the comity which should exist between the courts.

With regard to the contention that the superior court of Chatham county should prevail over that of the bankruptcy court for the reason that the dissolution of the corporation was prayed, it is sufficient to say that such a power seems beyond the jurisdiction of that court. In the case of Gibson v. Thornton, 107 Ga. 563, 33 S. E. 896, the Supreme Court of Georgia declares:

"In this state such authority has not been conferred upon courts of equity."

It adds:

"If a court of equity cannot dissolve a corporation, can it do what would be—certainly in a case of the present character—tantamount to the same thing, that is, appoint a receiver, sequester its property, decree a sale of all

its property and franchises and a distribution of the fund arising from such sale among its creditors and stockholders?"

The question is answered in the negative.

This ruling has been followed by Judge Newman, in the Northern district of Georgia, in Re Adams & Hoyt Company, 164 Fed. 489. This, too, was an attempt to dissolve an insolvent corporation so as to avoid jurisdiction in bankruptcy.

But even if the superior court had the power to dissolve the corporation, since the petition was filed within four months antecedent to the bankruptcy, and it discloses the complete insolvency of the corporation itself, the provisions of the bankrupt law would become operative, and the court of another jurisdiction would have no right to sequester the property and restrain creditors otherwise entitled to proceed in the bankruptcy court.

The paramount and controlling ruling on this subject may be found in Re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933. There, too, a receiver was appointed for the assets of an insolvent corporation by a state court in Indiana upon a bill filed for the purpose of dissolving it and winding up the business. Said Chief Justice Fuller:

"The operation of the bankruptcy laws of the United States cannot be defeated by an insolvent commercial corporation applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit, but that rule can have only a qualified application where winding up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent. Still it obtains as a rule of comity, and, accordingly, the receiver of the District Court brought this appointment to the knowledge of the Floyd Circuit Court and requested the delivery of the assets."

The court is constrained to make this determination because of consideration of law and the sworn admission of record made by the bankrupt above set forth. The delicate and important questions have been considered with unfeigned respect and deference for the eminent and high-minded jurist whom the people have been so fortunate to secure as judge of the superior court of Chatham county.

For the reasons stated, the injunction heretofore granted against any disposition of the assets by the receiver of the state court will be continued, and a receiver appointed in accordance with the prayers of the petition here pending. This officer will be directed to apply in terms of suitable respect to the Honorable Walter G. Charlton, judge of the superior court of Chatham county, and seek at his hands an order directing the receiver of the state court to turn over to the receiver of this court the assets of the alleged bankrupt in his hands. The time at which this application should be made will also be directed by order.