## J. W. ZEIGLER ET AL. *vs.* J. W. ZEIGLER CO., INCORPORATED.

Bankruptcy proceedings against an alleged insolvent corporation, begun within four months after an application to a State court for the appointment of a receiver of its assets, suspend the further administration of the assets in the State court.

A receiver or trustee in bankruptcy so appointed by the Federal court is entitled to the custody of the assets of the alleged bankrupt in the custody of the State court in such a receivership proceeding.

The State receiver should deliver the assets of the alleged bankrupt to the Federal receiver or trustee, only upon an order of court.

Whether the Federal court can make such an order, valid against the receiver of a State court, *quære*. (See cases below.)

Upon the application of the Federal trustee or receiver to the State court for the delivery to him of the assets of the alleged bankrupt, the State court will settle the account of its receiver and order the balance of the assets to be delivered to the Federal receiver or trustee.

CURTIS, J. This is an action for the dissolution of a corporation, and for the appointment of a receiver and the administration of the assets of the corporation under the State laws. A receiver was duly appointed by this court and he now has assets of the corporation in his hands.

After the appointment of the State receiver, and within four months from the application for such appointment, a petition in bankruptcy was filed in the United States District Court, and pending an adjudication as to bankruptcy the District Court appointed a receiver to take charge of and hold the estate of the defendant, the J. W. Zeigler Co., Incorporated. The receiver of the Federal court now appears in this court,

(712)

presents due proof of his appointment, and petitions this court to direct its receiver to turn over the assets of the J. W. Zeigler Co., Incorporated, in his hands to the Federal receiver.

The following propositions of law and comity appear to be well settled in reference to situations like that at bar, where a receiver of a State court is administering assets of a corporation, and a petition in bankruptcy is filed against it.

1. The bankruptcy proceedings operate to suspend the further administration of the assets of the alleged insolvent in the State court.

2. This suspension should be brought into operation by notice given in due form to the State court of the pendency of the petition in the Federal court, whereupon, on its own motion, the State court should suspend the administration of the assets and merely provide for their preservation until the adjudication as to bankruptcy, or the appointment of a Federal receiver.

3. If there is an adjudication of bankruptcy and a trustee appointed, the trustee should present to the State court due proof of these facts, and apply for an order from the State court to its receiver to deliver the assets of the bankrupt to the Federal trustee.

4. If the Federal court, before the adjudication of bankruptcy, finds that it is "absolutely necessary for the preservation of the estate" to appoint a receiver of the estate of the alleged bankrupt, such receiver should appear in the State court with due proof of his appointment and apply for an order from the State court directing its receiver to transfer the assets to the Federal receiver.

5. The State court should, upon such an application by a Federal trustee or receiver, settle the account of the State receiver and order him to deliver the assets remaining in his hands to the Federal trustee or re-

ceiver. In case of delivery to a Federal trustee the State receiver should be discharged by the State court, but not upon delivery to a Federal receiver (unless he so desires) until the adjudication as to bankruptcy, as the assets, in case of failure to find bankruptcy, would come back into the State court for administration.

6. The transfer of assets from the State receiver to the Federal receiver or trustee would not terminate the action for the dissolution of the corporation.

7. A State receiver can only act under order of court, and could not voluntarily deliver assets in his hands to a Federal receiver upon demand without such an order.

8. The State court could, and under such facts as exist here would, always make such order if duly requested.

9. Whether a Federal District Court could make such an order directed to a State receiver, which it would be his duty to obey, is not entirely clear, since the property is in law in the hands of the State court and its receiver is its custodian.

10. The assets which the receiver or trustee in bankruptcy is entitled to receive from the State court receiver are not all the assets, but only the balance over the receiver's fees and expenses allowed to him in the settlement of his account in the State court preparatory to granting an order directing him to deliver the assets to the Federal receiver or trustee.

The authorities in support of these propositions, in so far as they are not elementary, are the following: *In re Watts and Sachs*, 190 U. S. 1, 23 Sup. Ct. Rep. 718; *In re Oakland Lumber Co.*, 174 Fed. Rep. 634, 637, 98 C. C. A. 388; *Hooks* v. *Aldridge*, 145 Fed. Rep. 865, 870, 76 C. C. A. 409; *Mauran* v. *Crown Carpet Lining Co.*, 23 R. I. 324.

In *In re Watts and Sachs*, 190 U. S. 1, 23 Sup. Ct. Rep. 718, the court says, on page 35: "It has been already assumed that the bankruptcy proceedings op-

erated to suspend the further administration of the insolvent's estate in the State court, but it remained for the State court to transfer the assets, settle the accounts of its receiver and close its connection with the matter. Errors, if any, committed in so doing could be rectified in due course and in the designated way." Also, on page 30 of this opinion, the language of the Supreme Court of the United States is such as to clearly indicate that a State receiver could not properly be required to turn over assets without an order from the State court. The opinion reads (p. 30): "And the difficulty is the (State) receiver had no power to make the surrender (to the receiver of the United States court) when it (the surrender) was made. It (the receiver) was the representative of the State court. The property in its hands was property *in custodia legis,* and it had only such authority as was given to it by the court, and could not exceed the limits prescribed by the (State) court."

This statement of the authority and duty of a receiver of a State court is reiterated in the United States Circuit Court of Appeals in the Second District. In the case *In re Oakland Lumber Co.,* 174 Fed. Rep. 634, 637, 98 C. C. A. 388, the court, quoting from an unpublished opinion of its own, says: "The court (United States District) has jurisdiction under the statute to appoint receivers only when it shall find it absolutely necessary for the preservation of estates. The petition upon which this receivership was granted . . . shows the property to have been in the custody of a receiver appointed by the Supreme Court of the State of New York. . . . What could the Federal receiver do under such circumstances? He has not title to any property. He is a mere custodian. He could not take the assets from the State court receiver. The bankruptcy court could not make any such order and the assets could only

be taken from the State court receiver by an application in the State court itself."

A different view as to the duty of a State court receiver in relation to a trustee in bankruptcy is expressed in the following case. *In re Hecox*, 164 Fed. Rep. 823. The court says on p. 825 *et seq.*: "In contemplation of the Bankrupt Act, in so far as concerned his (State court receiver's) right to the custody of the property of the bankrupt, he stood as if he had never been appointed by the State court. In such situation, as he holds the property not in his own right, but solely in his claimed official capacity, it was his duty, on notification and demand by the trustee in bankruptcy, to deliver the property to him. But inasmuch as he was the appointee of the State court, as a mere act of courtesy, sometimes, but hardly accurately, termed 'judicial comity,' the bankrupt court in the first instance directed the trustee to prefer a request to the State court for an order on its receiver to deliver the property in custody to the trustee. In such case, if the State court decline to reciprocate the consideration thus paid to its dignity, the law is well settled that it is then competent for, and the duty of, the bankrupt court to order the (State) receiver to deliver the property over to the trustee, and he would be in contempt if he refuse to comply therewith."

This opinion states that the Federal court has the power to make an order directed to a State court receiver to deliver assets to a Federal court trustee, disobedience to which order by the State court receiver would be contempt of the Federal court.

The United States Supreme Court, Vol. 190, p. 30, and the United States Circuit Court of Appeals, Second District, 174 Fed. Rep. 637, seem to hold a contrary view, as set forth above.

In *Hooks* v. *Aldridge*, 145 Fed. Rep. 865, 870, the

court (United States Circuit Court of Appeals, Fifth Circuit) discusses the power of the Federal court to order a State court receiver to deliver the assets of a bankrupt in its hands to a Federal trustee; and on p. 870 speaks as follows in a case where the State court refused to order its receiver to turn over assets to a trustee in bankruptcy: "Whether the bankruptcy court should make such orders as will preserve the estate (injunction against State receiver), and await the final result of the litigation in the State courts, or should act on its own opinion of the want of jurisdiction of the State court, and enforce its order to secure the possession of the property, is one of the questions left unsettled, so far as we are advised, by a decision of the (United States) Supreme Court."

These cases fully present the present condition of the law upon this important and interesting question.

In the case at bar, the primary object of which is the dissolution of the corporation, there is no question of the continued jurisdiction of this court after the beginning of bankruptcy proceedings. Its action in appointing a receiver and beginning to administer the assets was also within its jurisdiction and lawful, but such administration is suspended by the proceedings in bankruptcy. The assets in such case are to be held unadministered subject to the action of the bankrupt court. The duty of the State court is then to settle the account of its receiver, and order the balance of assets paid over on due request, to a receiver or trustee of the Federal court. See *In re Watts and Sachs*, 190 U. S. 1, 35, as quoted above; *Loveless* v. *Southern Grocery Co.*, 159 Fed. Rep. 415; *Louisville Trust Co.* v. *Comingor*, 184 U. S. 18.

In *Mauran* v. *Crown Carpet Lining Co.*, 23 R. I. 344, the question as to making allowances in the State court for fees and expenses of its receiver came directly before the Supreme Court of Rhode Island, and Stiness, C. J.,

writing the opinion, held in substance: 1. The fund which the trustee in bankruptcy is entitled to receive from the receiver of a State court is not the whole fund, but only the balance over the receiver's fees and expenses which will be allowed to him by the State court. 2. No consideration of comity requires that the State court should send its receiver to the Federal court for the purpose of having his fees allowed, and mutual convenience requires that the matters preliminary to the ascertainment of the fund belonging to the trustee from the State court should be settled there.

See, for intimation to the same effect, *Randolph* v. *Scruggs*, 190 U. S. 533, 538, 539. So far as this court is informed this has been the uniform custom followed in similar situations in this State. This course was pursued in National Steel and Wire Co. *v.* National Wire Corp., in New Haven, August 14th, 1907, by this court.

The receiver's report shows that he has sold all the merchandise of said corporation for    .    .    $6,250.00

That he holds the sum of $400, subject to the result of a suit as to the title to 127⅝ bbls. of flour, as fully appears in his report on file.

That the book-accounts of said corporation are now held by a bank under a claim of title.

The receiver has paid out for incidental matters appearing on his account that were necessary and are allowed    .    .    .    .    $413.15

For services on his part that were beneficial to the estate the court allows him .    .    .    .    $350.00

For attorneys' services rendered to him as receiver he is allowed    .    $300.00

Such services as the attorneys rendered in beginning this action are claims against the stockholders who instituted the action.

The receiver of this court is ordered to pay over to the receiver of the Federal court the balance of funds in his hands after deducting the foregoing allowances, also to pay over to him the $400 subject to the suit as to the title to the flour, and all book-accounts, if he has any, of said corporation, and all books, papers, and other property of the corporation, if he has any, in his possession and take a receipt therefor and duly report his proceedings to this court.

Judgment accordingly.