### In re UNITED WIRELESS TELEGRAPH CO.

#### Ex parte HILL et al.

#### (District Court, S. D. New York. May 1, 1912.)

1. BANKRUPTCY (§ 391*)—ACTIONS AGAINST BANKRUPT—STAY.

   A motion by trustees of a bankrupt corporation to stay a suit in a state court brought by stockholders prior to the bankruptcy against the corporation and its directors, praying for an injunction, the appointment of a receiver, and a distribution of its assets, should not be granted by the court of bankruptcy, where the assets have been turned over by the state receivers to the trustees, and there is legitimate scope for the judgment of the state court without interfering with the jurisdiction of the bankruptcy court.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*]

2. BANKRUPTCY (§ 391*)—STAY OF SUIT IN STATE COURT—DISCRETION.

   While a court of bankruptcy has power to stay a suit in a state court against a bankrupt instituted prior to the bankruptcy, such power is discretionary, and should be sparingly exercised.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*]

In the matter of the United Wireless Telegraph Company, Bankrupt. On motion by John H. Hill, Philip G. Clifford, and Robert H. Montgomery, Trustees, to stay suit in state court. Motion denied.

This is an application by the trustees in bankruptcy of the bankrupt corporation for an order staying the prosecution by the plaintiffs therein of a suit in the Supreme Court of the state of New York against the bankrupt corporation, its subsidiary, and the directors of the bankrupt. The bankruptcy proceeding itself was brought in the District Court of Maine, and this application is therefore ancillary to the jurisdiction of that court.

On June 9, 1911, certain minority stockholders of the bankrupt corporation commenced a suit in the Supreme Court in the county of New York against the two corporations and all the directors of the bankrupt, alleging, first, that the corporation was organized under the laws of the state of Maine; second, that it had large assets in the county of New York, and in several of the other states and territories of the United States; third, that the plaintiffs were all stockholders; fourth, that the defendants were directors; fifth, that the other corporate defendant, the United Wireless Company of New York, was a dummy corporation of the defendant; sixth, that the individual defendants

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had by various malpractices brought the affairs of the defendant corporation to a low ebb and into great danger of insolvency; seventh, that the leading directors had been convicted in the Circuit Court for the Southern District of New York for the fraudulent use of the mails, and were then in the penitentiary awaiting appeal; eighth, that the assets of the company were in great peril; ninth, that the company had many contracts with the United States government and various ships requiring their constant performance in the interest of safety in sea-going shipping; and, tenth, that there were many citizens of the state of New York who were stockholders and creditors of the company. This was the general frame of the complaint without attempting to repeat its details with accuracy. The plaintiff demanded relief: First, that a receiver be appointed for the corporate defendants; second, that all the claims against the corporations should be determined, and that their property both in New York and elsewhere should be collected and distributed; third, that the individual defendants should be restrained from transferring the assets of the company and from acting as directors; fourth, that all the banks, trust companies, and other persons who held assets of the corporations should be enjoined from paying them over; fifth, general relief. Thereafter, on the 12th day of June, 1911, the state court for Maine, in still another suit brought subsequently to the New York suit, appointed receivers for the corporation, and on June 19, 1911, the Supreme Court of the state of New York appointed Robert E. Dowling and Sidney E. Harris temporary receivers in the New York suit. While, therefore, the New York receivers were appointed in a suit commenced before the Maine suit, they were actually appointed receivers a week after the Maine receivers. On the 10th day of July, 1911, the New York temporary receivers commenced two suits in the Supreme Court of the county of New York, one against George H. Parker, a resident of the state of Washington, and the other against Christopher C. Wilson, a resident of the state of New York. Both Parker and Wilson were directors of the bankrupt corporation, and the suits were based upon certain claims upon behalf of the corporation for misconduct as such directors. On July 7, 1911, an involuntary petition was filed in the United States District Court of Maine against the bankrupt, and on the next day a receiver was appointed. The receiver or his successors were continued down until trustees were appointed on September 29, 1911, after adjudication. Meanwhile, under orders from the United States District Court for the Southern District of New York, the state receivers delivered to the federal receivers all chattels and other assets which had come into their possession with the possible exception of the supposed choses in action against Parker and Wilson. The trustees have brought other similar suits against Parker and Wilson, but the original suits of the temporary receivers have never been discontinued. Thereafter, the trustees, acting with the consent of the United States District Court for Maine, appeared in the original New York suit as defendants, and petitioned that the Supreme Court discontinue the suits brought by the New York receivers against Parker and Wilson, and on February 28, 1912, that court decided that the suits should be discontinued, but only upon payment to the attorney for the receivers of his allowances and fees, to be fixed by reference. This decision the Supreme Court reaffirmed upon reargument upon the 11th of March, 1912. Thereupon the trustees applied to the District Court for the Southern District of New York on March 18, 1912, for an order peremptorily enjoining the state receivers from taking any steps in the suits against Parker and Wilson until further order, which motion was granted on April 4, 1912.

Meanwhile the trustees had served an answer in the original suit in New York setting up as a defense their appointment and qualification as trustees in bankruptcy, to which answer they moved that the plaintiffs should reply, as permitted by the practice of the state of New York. The Supreme Court denied this motion in a short memorandum handed down on April 23, 1912, as follows: "An adjudication in bankruptcy and the appointment of a trustee, as alleged in the answer, would not necessarily determine this action, since the plaintiffs are entitled to the finding of the trial court upon questions involving the propriety of provisional remedies which have been granted pendente lite. Under the circumstances, an actual admission of the new matter by a reply could not properly conclude the case and there appears to be no good reason for granting the order sought. Motion to require a reply denied,

with $10 costs." This motion came on to be heard after the decision of the Supreme Court upon that motion.

Robert Kelley Prentice, for the motion.
Roger Foster, opposed.

HAND, District Judge (after stating the facts as above). [1] The New York receivers have delivered all the chattels to the trustees. They retain nothing by any possible construction, unless it be the choses in action against Parker and Wilson, in so far as one retains a chose in action by keeping alive an action upon it. What mischief then can the prosecution of the original suit actually do to the bankrupt estate? First, it can purport to determine something in respect of its distribution, which, as the trustees are now parties, might be urged to create an estoppel against them. It is true that the jurisdiction of the bankruptcy court is exclusive, and it is also true that the original suit was nothing but an effort at sequestration and therefore in rem, and that the assets have now been delivered by the state court, with the questionable exception of the choses in action mentioned. However, it would be absurd to deny that a judgment on its face purporting in any way to adjudge the rights of the receivers or of trustees, or of any creditors, or of the bankrupt, to any of the assets of the bankrupt estate would be a source of embarrassment and perhaps of litigation for the trustees. Second, it might even assume to issue process against the trustees in bankruptcy, in respect of the assets with whose title they are vested by the act of Congress, especially in respect of the choses in action against Parker and Wilson, or to direct that these causes of action should be prosecuted by the receivers and not by the trustees. These, if threatened, would justify the interposition of this court; perhaps there are other acts which might justify it.

[2] On the other hand, is there anything which the state court could do in that suit which would not be in diminution of the powers of the bankruptcy court? Mr. Justice Bischoff has already indicated that it could enter a judgment which adjudged proper the provisional remedies already obtained, and so relieve the plaintiffs from further payment of bond premiums. It might likewise determine the distribution among stockholders of any dividends which should come to the corporation on conclusion of the bankruptcy, if any there should turn out to be. Of course, I am not passing upon the propriety of such a suit as this against a foreign corporation at all, for that is exclusively a matter for the state court. I am only suggesting what, if such a suit is maintainable from any point of view, the state court could do which would not interfere with the jurisdiction of the bankruptcy court. There may be other things which do not now occur to me which the state court might do, if its judgment were limited so as not to attempt any such interference, but it is enough that there is a legitimate scope for its judgment, and that the dean of its bench, Mr. Justice Bischoff, has already indicated his opinion of what it might do. To stay the suit could only be because of some distrust in the ability of the state court or its loyalty to the act of Congress. Undoubtedly the very existence of any federal

court does presuppose that state courts will not be free from local bias, but it is one thing to provide means to litigants for avoiding that bias, and another to intervene for that reason in the very operation of a court already begun. Even the latter power does exist (In re Hecox, 164 Fed. 823, 90 C. C. A. 627; Hooks v. Aldridge, 145 Fed. 865, 76 C. C. A. 409; New River Coal & Land Co. v. Ruffner, 165 Fed. 881, 91 C. C. A. 559), but its existence does not mean it ought always to be exercised, and, in fact, it ought to be very sparingly exercised, rather after the analogy of habeas corpus (Ex parte Royall, 117 U. S. 250, 6 Sup. Ct. 742, 29 L. Ed. 872). Indeed, nothing more quickly makes contempt for law than to have judges each catching at jurisdiction, and nothing more quickly breeds confidence than if judges really trust in each other. It shows rather a martial than a judicial vigor to assert such a jurisdiction, and, unless it be unavoidable, it ought not to be used. This is what the Supreme Court had in mind, I think, in Re Watts, 190 U. S. 1, on page 35, 23 Sup. Ct. 718, on page 727 (47 L. Ed. 933), when it said:

"It remained for the state court to transfer the assets, settle the accounts of its receiver, and close its connection with the matter. Errors, if any, committed in so doing, could be rectified in due course and in the designated way."

Moreover, even if the state court does not so scrupulously regard the limitation of its own jurisdiction as the trustees think it should, they have their appeal, and, if by evil chance that does not serve them, still, since the question is of jurisdiction, the bankruptcy court has an inherent power to protect its own possession and its own suitors, should they be disturbed.

The trustees complain of the expense of the defense, but I cannot avoid that, for it is an expense which arises from the financial entanglements of the bankrupt before bankruptcy. Besides, it ought not to be laborious or expensive to try the cause, in which they have no interest in the issues, but only in the form of the judgment which shall be taken. The state court certainly has the power to close up its own suit and enter a judgment. I could not, even if I would, enjoin such action, because it was possible that it might press its judgment further than it should. No case goes to that length

Motion denied.