---

## In re SAGE.

### (District Court, E. D. Missouri, N. D. June 20, 1915.)

### No. 367.

1. BANKRUPTCY ⬤⟿11—COURTS OF BANKRUPTCY—EXCLUSIVE CHARACTER OF JURISDICTION.

Upon a valid adjudication of bankruptcy, the jurisdiction of the court of bankruptcy, which attaches from the time of the filing of the petition, to administer the property of the bankrupt, is exclusive, and no other court, after the filing of such petition, can make any order or decree which will deprive it of such exclusive jurisdiction, nor can the court of bankruptcy itself properly surrender it to another court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. ⬤⟿11.]

2. BANKRUPTCY ⬤⟿293—ADMINISTRATION OF ESTATE—REDUCTION TO POSSESSION—ANCILLARY JURISDICTION.

A court of bankruptcy may exercise ancillary jurisdiction for the purpose of enabling a trustee in bankruptcy, who has been appointed and qualified in another jurisdiction, to reduce to his possession property of the bankrupt which is within the territorial jurisdiction of the court whose ancillary jurisdiction is invoked; and where the court of primary jurisdiction can act summarily the court exercising ancillary jurisdiction may also proceed by summary order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. ⬤⟿293.]

3. BANKRUPTCY ⬤⟿100—ADJUDICATION—COLLATERAL ATTACK.

Where a petition in involuntary bankruptcy and the answer of the bankrupt show the requisite jurisdictional fact as to domicile, the adjudication made thereon cannot be questioned collaterally.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. ⬤⟿100.]

4. BANKRUPTCY ⬤⟿73—PERSONS SUBJECT TO JURISDICTION—PRIVATE BANKER.

That a bankrupt conducted a private bank under state law does not affect the validity of the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. ⬤⟿73.]

5. BANKRUPTCY ⬤⟿100—ADJUDICATION—IRREGULARITIES IN PROCEDURE.

On the filing of a petition in involuntary bankruptcy, no subpœna was issued for the defendant; but six days later he appeared and filed an answer, admitting the allegations of the petition, which showed the requisite jurisdictional facts, consenting to be adjudged a bankrupt, and asking that the matter be at once referred for adjudication. Thereupon the clerk, without waiting for the expiration of the time for filing pleadings

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fixed by Bankr. Act July 1, 1898, c. 541, § 18, cls. "a," "b," "c," 30 Stat. 551 (Comp. St. 1913, § 9602), or making any finding of the absence of the judge at that time, referred the petition to a referee who made the adjudication. *Held* that, while such procedure was irregular, the defects were not jurisdictional, and did not render the adjudication subject to collateral attack.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. ☜100.]

6. BANKRUPTCY ☜73, 138—"PRIVATE BANKER"—PROPERTY VESTING IN TRUSTEE.

By the statutes of Missouri private bankers are defined as "those who carry on the business of banking * * * without being incorporated" (Rev. St. 1909, § 1116), and the owner of such a business, whether a natural person or an unincorporated company, is subject to adjudication as an involuntary bankrupt, under Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547, as amended by Act June 25, 1910, c. 412, §§ 3, 4, 36 Stat. 839 (Comp. St. 1913, § 9588); and the state statute, further providing that the property of such a bank may be sold on execution after judgment, it is such as "might have been levied upon and sold under judicial process" against the owner, and therefore on an adjudication of bankruptcy vests in the trustee as of the date of the filing of the petition under section 70a (5), being Comp. St. 1913, § 9654.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 17, 193–204, 206–209; Dec. Dig. ☜73, 138.

For other definitions, see Words and Phrases, First and Second Series, Private Banker.]

7. BANKRUPTCY ☜296—JURISDICTION OF COURTS—SUMMARY PROCEEDINGS BY TRUSTEE TO RECOVER PROPERTY—"ADVERSE CLAIMANT."

A receiver appointed by a state court in a suit instituted, and who took possession of property, after the filing of a petition in bankruptcy against the owner, is not an "adverse claimant" in such sense as to deprive the court of bankruptcy of jurisdiction by a summary order to direct the delivery of such property to the trustee, nor is his right strengthened by the fact that the property was previously in charge of a special agent appointed by the state bank commissioner.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 414; Dec. Dig. ☜296.

For other definitions, see Words and Phrases, Second Series, Adverse Claimant.]

8. BANKRUPTCY ☜296—JURISDICTION OF COURTS—DIRECTING DELIVERY OF PROPERTY TO TRUSTEE.

While a court of bankruptcy may as a matter of comity direct a trustee to apply to a state court for possession of property of the bankrupt held by its receiver, it cannot thereby surrender its own jurisdiction to order delivery of the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 414; Dec. Dig. ☜296.]

In Bankruptcy. In the matter of David H. Sage, bankrupt. On petition by Johnson B. Angle, trustee, for an order against McDermott Turner, state receiver, for the delivery of property. Petition granted.

Boyd & McKinley, of Keokuk, Iowa, for trustee in bankruptcy.

John T. Barker, Atty. Gen., W. T. Rutherford, Asst. Atty. Gen., J. P. Gilmore, of Tulsa, Okl., T. L. Montgomery, of Kahoka, Mo., and W. M. Fitch, of St. Louis, Mo., for the state receiver and creditors.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DYER, District Judge. This is a petition filed in this court by Johnson B. Angle, as trustee in bankruptcy of David H. Sage, bankrupt, praying that the court make an order directing McDermott Turner, a receiver appointed by the circuit court of Clark county, Mo., to turn over to the petitioner certain property in his custody. The facts out of which this controversy arose are these:

For some years prior to October, 1914, the bankrupt, David H. Sage, was engaged in the mercantile business in Clark county, Mo., and elsewhere, and also conducted a bank at Alexandria, Clark county, Mo., under the name of Sage Banking Company. The bankrupt was the sole owner of the bank, and the bank had been regularly established and conducted by him as a private bank under and pursuant to the statutes of Missouri relating to private banks. On October 15, 1914, the bankrupt made a general assignment of all his property, real, personal, and mixed, to Charles Hiller, of Kahoka, Clark county, Mo., for the benefit of all his creditors, but in this assignment "did not name the Sage Banking Company." The assignee refused to qualify under the assignment, and did not take possession of the property assigned. About October 15, 1914, the bankrupt notified the bank commissioner of the state of Missouri that the Sage Banking Company had voluntarily closed its doors and requested the bank commissioner to take charge of its affairs. On the same day the bankrupt caused a notice to be posted on the front door of the bank as follows: "This bank is in the hands of the bank commissioner." On October 16, 1914, one of the state bank examiners, acting under the direction of the bank commissioner, took charge of the bank and began an examination of its affairs. On October 17, 1914, the bank commissioner, finding that the bank was insolvent, appointed the respondent McDermott Turner, of Kahoka, Mo., special agent to take charge of its affairs, and said Turner qualified at once as such special agent by taking and subscribing an oath and executing a bond as required by law. On November 21, 1914, the Attorney General of the state of Missouri, acting upon a report made to him by the bank commissioner that the bank was unable to liquidate its business to the satisfaction of all of its creditors, made application to the circuit court of Clark county, Mo., for the appointment of a receiver for said bank, and said court thereupon appointed McDermott Turner receiver of said bank, and the receiver at once qualified and took possession of the property of the bank and began winding up its affairs.

On November 19, 1914, an involuntary petition in bankruptcy was filed against the bankrupt, David H. Sage, in the District Court of the United States for the Eastern Division of the Southern District of Iowa. This petition was in the prescribed form, and alleged all the jurisdictional and other facts necessary to obtain a valid adjudication of bankruptcy. Among other things this petition averred that the bankrupt "had his principal place of business, or resided, or had his domicile, at Keokuk, Lee county, Iowa, for the greater portion of six months next preceding the date of filing this petition," and charged as an act of bankruptcy that "on the 15th day of October, 1914, the said David H. Sage was insolvent, and on said date made a general as-

signment for the benefit of his creditors." On November 25, 1914, the bankrupt filed in the office of the clerk of the United States District Court aforesaid his answer to the foregoing petition, in which he admitted the act of bankruptcy charged, and further averred in his answer that "his domicile for more than six months last past has been in Keokuk, Lee county, Iowa, but that his actual residence during all of said time, and prior thereto, is still in Alexandria, Clark county, Mo.; that he is a citizen of the state of Missouri." The bankrupt in his answer further "admitted his willingness to be adjudged a bankrupt, and asked that the involuntary petition in bankruptcy * * * might be at once referred to the referee in bankruptcy in the county of Lee and state of Iowa, and that such proceedings might be had as are provided by the Bankrupt Law." Thereafter, on November 25, 1914, the clerk of the United States District Court aforesaid made and entered an order reciting that:

"Whereas, the judge of said court was absent from the Eastern division of the Southern district of Iowa at the time of the filing of said petition; and whereas, an answer has been filed by the alleged bankrupt admitting insolvency: It is ordered that the said matter be referred to W. J. Roberts, one of the referees in bankruptcy of said court, to consider said petition and take such proceedings as are required by the Bankrupt Act."

And the case was thereupon referred to said referee in bankruptcy. Thereafter, on November 27, 1914, the referee in bankruptcy before mentioned made an order adjudicating David H. Sage bankrupt. Afterwards, on January 7, 1915, the petitioner, Johnson B. Angle, was duly appointed trustee of the estate of the bankrupt, and on January 11, 1915, qualified as such trustee.

Afterwards, on February 2, 1915, the trustee filed in this court a petition asking that the court make an order directing McDermott Turner, the receiver appointed by the circuit court of Clark county, to turn over to the petitioner certain property in the possession of said receiver, alleged to belong to the bankrupt estate. On the same day the court granted a rule to show cause, directed to said McDermott Turner, receiver, returnable February 15, 1915. Upon the return day of said rule the said McDermott Turner, receiver, and certain persons who alleged themselves to be "depositors and creditors of the Sage Banking Company," by leave of this court, filed written objections to the granting of the order prayed for. A hearing was thereupon had upon the petition of the trustee, and the objections filed, and it appearing that the trustee had not applied to the circuit court of Clark county for an order directing its receiver to turn over to him the property in controversy, this court on the same day made an order discharging the rule to show cause "without prejudice, and with special leave to the said trustee to renew his application in the premises after having applied to the circuit court of Clark county, Mo., for an order directing the receiver appointed by that court to turn over the property in his possession."

Thereafter, on May 24, 1915, the petitioner, as trustee of the bankrupt estate, filed in this court his petition, alleging, among other things, that he had filed in the circuit court of Clark county, Mo., in the case

of State of Missouri ex rel. v. David H. Sage, Doing Business as the Sage Banking Company, an application reciting the facts as to the bankruptcy of David H. Sage, and asking said court to order its receiver, McDermott Turner, to turn over to him the property of David H. Sage, the bankrupt, doing business as the Sage Banking Company, in his hands as receiver; that the circuit court of Clark county had thereupon made and entered an order directing its said receiver to turn over to the petitioner all of the property in his hands, except the sum of $1,600; that the said receiver had refused and still refuses to turn over the property to the petitioner; and the petitioner prayed this court to make an order directing the receiver to turn over to him all the property of David H. Sage, doing business as the Sage Banking Company, now in his hands. No formal rule to show cause has been asked or granted, but McDermott Turner, receiver, the state of Missouri, by its Attorney General, and Erwin Fox, George W. Cannon, and James Fulton, depositors and creditors of the Sage Banking Company, * * * for themselves and all other depositors and creditors of said Sage Banking Company, have through their respective counsel voluntarily appeared herein, and by leave of court have respectively filed answers to the petition of the trustee in bankruptcy, and have also filed an agreed statement of facts.

In addition to the facts heretofore stated, this agreed statement of facts shows that the state of Missouri, the receiver, McDermott Turner, and Erwin Fox, George W. Cannon, and James Fulton, "creditors and depositors of the Sage Banking Company," have taken an appeal to the Supreme Court of Missouri from the order entered by the circuit court of Clark county, directing the receiver to turn over the property in controversy to the petitioner herein, and that these appellants have given a supersedeas bond, which has been approved by the circuit court of Clark county, and that the case is now pending on appeal in the Supreme Court of Missouri. The matter has been heard by and submitted to this court upon the petition and answers, and upon the agreed statement of facts filed herein by the parties, and previously referred to.

[1] The consideration of the questions presented by this case can perhaps be best approached by first stating some general principles of law which have been established by the judicial construction of the present Bankrupt Act. Where a valid adjudication of bankruptcy has been made by a court of bankruptcy, the jurisdiction of that court to administer the property of the bankrupt is exclusive, and it cannot properly surrender its jurisdiction to any other court. United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055. The jurisdiction of a court of bankruptcy attaches from the time of the filing of the petition in bankruptcy, and the effect of the filing of the petition is to place all of the property of the bankrupt, not in the possession of adverse claimants, in the legal custody and under the exclusive control of the court of bankruptcy. After the petition has been filed no other court can make any order, or decree, which will deprive the court of bankruptcy of its exclusive control over the administration of the bankrupt's property. Lazarus v.

Prentice, 234 U. S. 263, 34 Sup. Ct. 851, 58 L. Ed. 1305; Acme Harvester Co. v. Beekman, 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208; State Bank v. Cox, 143 Fed. 91, 74 C. C. A. 285. It follows, as a corollary to the foregoing doctrine, that after the jurisdiction of the court of bankruptcy has attached no other court can make any order or decree which will operate to vest in any one a claim or title to the bankrupt's property which is adverse to his trustee in bankruptcy. Lazarus v. Prentice, 234 U. S. 263, loc. cit. 266, 34 Sup. Ct. 851, 58 L. Ed. 1305; State Bank v. Cox, 143 Fed. 91, 74 C. C. A. 285.

[2] It is also well settled that a court of bankruptcy can exercise ancillary jurisdiction for the purpose of enabling a trustee in bankruptcy, who has been appointed and qualified in another jurisdiction, to reduce to his possession property of the bankrupt which is within the territorial jurisdiction of the court whose ancillary jurisdiction is invoked, and that, where the court of primary jurisdiction can act summarily, the court exercising ancillary jurisdiction may also proceed by summary order. Bankrupt Act, § 2 (20) being Comp. St. 1913, § 9586; Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Lazarus v. Prentice, 234 U. S. 263, 34 Sup. Ct. 851, 58 L. Ed. 1305.

Applying the foregoing general principles to the facts of this case, we may say: (1) That if the United States District Court for the Southern District of Iowa had jurisdiction to adjudicate David H. Sage bankrupt; and (2) if the property of David H. Sage, doing business as the Sage Banking Company, is such property as under the provisions of the bankrupt law passed to the trustee by virtue of the adjudication of bankruptcy; and (3) if the respondents are not adverse claimants within the meaning of the law—then the petitioner is clearly entitled to the relief here asked. On the other hand, if, under the facts of this case, we are obliged to negative any one of the foregoing assumptions, then no redress can be given the petitioner in this proceeding. The questions thus presented will be considered in the order in which they have just been stated.

[3] 1. It is contended that the United States District Court for the Southern District of Iowa had no jurisdiction to adjudge David H. Sage bankrupt, for the reason that he did not have his principal place of business, residence, or domicile in Iowa, and also because as a private banker he was not subject to be adjudicated a bankrupt. The court is of opinion that neither of the objections made is tenable. It was averred in the petition that the bankrupt had his principal place of business, residence, and domicile in the Eastern Division of the Southern district of Iowa for the requisite period, and the bankrupt admitted in his answer that he had his domicile within the jurisdiction of that court for more than six months prior to the date of filing his answer. As the pleadings showed the requisite jurisdictional fact as to domicile, the adjudication made thereon cannot be questioned collaterally. Edelstein v. United States, 149 Fed. 636, 79 C. C. A. 328, 9 L. R. A. (N. S.) 236; Gilbertson v. United States, 168 Fed. 672, 94 C. C. A. 158; In Re First National Bank, 152 Fed.

64, 81 C. C. A. 260, 11 Ann. Cas. 355; In Re Hecox, 164 Fed. 823, 90 C. C. A. 627; In Re Dempster, 172 Fed. 353, 97 C. C. A. 51.

[4] The fact that the bankrupt was the proprietor of a private bank can in no way affect the validity of the adjudication. The Bankrupt Law (section 4 [Comp. St. 1913, § 9588]) provides that:

"Any natural person, except a wage-earner or a person engaged chiefly in farming or tillage of the soil, * * * may be adjudged an involuntary bankrupt."

And unquestionably the bankrupt was subject to be adjudicated a bankrupt as a "natural person." Whether upon his adjudication his trustee in bankruptcy is entitled to administer the property appertaining to his private bank is a distinct question, which will be discussed later.

[5] Although the foregoing are the only questions affecting the jurisdiction of the court of bankruptcy to make the adjudication which have been suggested by the respondents, this court has considered another jurisdictional question which arises upon the agreed statement of facts. The adjudication of bankruptcy was not made by the judge, but by the referee in bankruptcy. The Bankrupt Act provides (section 18a) that, upon the filing of an involuntary petition in bankruptcy, process in the form of a writ of subpœna shall be served upon the alleged bankrupt, returnable within 15 days, unless the judge shall fix a longer time, and that the bankrupt or the creditors may appear and plead to the petition within 5 days after the return day, or within such further time as the court may allow. Section 18 of the Bankrupt Act further provides:

"(d) If the bankrupt, or any of his creditors, shall appear, within the time limited, and controvert the facts alleged in the petition, the judge shall determine, as soon as may be, the issues presented by the pleadings, without the intervention of a jury, except in cases where a jury trial is given by this act, and make the adjudication or dismiss the petition.

"(e) If on the last day within which pleadings may be filed none are filed by the bankrupt, or any of his creditors, the judge shall on the next day, if present, or as soon thereafter as practicable, make the adjudication or dismiss the petition.

"(f) If the judge is absent from the district, or the division of the district, in which the petition is pending, on the next day after the last day on which pleadings may be filed, and none have been filed by the bankrupt or any of his creditors, the clerk shall forthwith refer the case to the referee."

The act also provides (section 38 [Comp. St. 1913, § 9622]):

"Referees respectively are hereby invested, subject always to review by the judge, within the limits of their districts as established from time to time, with jurisdiction to (1) consider all petitions referred to them by the clerks and make the adjudications or dismiss the petitions."

It is manifest that the procedure prescribed by the statute was not strictly followed in this case. It does not appear that, upon the filing of the petition, a subpœna fixing a return day was issued. The agreed statement of facts merely shows that, on the sixth day after the petition was filed, a bankrupt appeared and filed an answer, admitting the substantial allegations of the petition, and consenting that he be ad-

judged a bankrupt, and asking that the case be at once referred to the referee. The clerk thereupon made an order reciting that:

· "Whereas, the judge of said court was absent from the Eastern division of the said Southern district of Iowa at the time of filing the petition aforesaid; and whereas, an answer having been filed by the alleged bankrupt, admitting insolvency: It is ordered that the said matter be referred to W. J. Roberts, Esq., one of the referees in bankruptcy in this court, to consider said petition and to take such proceedings as are required by the Bankrupt Act."

The course of procedure followed in this case is irregular in several particulars. The clerk did not issue a subpœna fixing the return day. This should have been done, for, while the bankrupt was entitled to appear, waive process, and consent to an adjudication, "any creditor" of the bankrupt was entitled to "appear and plead" to the petition within five days after the return day. In re Humbert, 4 Am. Bankr. Rep. 76, 100 Fed. 439. In involuntary cases the clerk is required to refer the case to the referee—

"if the judge is absent from the district, or the division of the district, in which the petition is pending, on the next day after the last day on which pleadings may be filed, and none have been filed by the bankrupt, or any of his creditors."

If the letter of the statute is to be followed, two facts must exist in order to warrant the clerk in referring the case to the referee, viz.: (1) That no pleadings have been filed within the time provided for pleading; (2) the absence of the judge from the district, or the division, "on the next day after the last day on which pleadings may be filed." In view of the terms of section 18, clause "d," of the act, the requirement that "no pleadings have been filed" should in my opinion be properly construed to mean no pleadings in opposition to the petition, and the fact that an answer confessing the allegations of the petition has been filed ought not to be a legal obstacle to the reference of the case by the clerk to the referee. But in this case, in referring the case to the referee, the clerk did not find or specify that the judge was absent "on the next day after the last day on which pleadings may [might] be filed," but found and recited in his order of reference that the judge was absent "at the time of the filing of the petition."

In view of the nature of the present proceedings, the court has given very careful consideration to the irregularities just referred to, with a view to determining whether they constitute jurisdictional defects which render the adjudication void, or, on the other hand, should be treated as mere errors of procedure, which might have been availed of upon direct review, but are not available collaterally. As the petition in bankruptcy contained all the requisite jurisdictional averments, and as the United States District Court in which it was filed had jurisdiction of the subject-matter, and acquired jurisdiction of the parties by virtue of the filing of the petition and the appearance of the bankrupt, the creditors of the bankrupt not being entitled under the law to any other notice than such as is imparted by the filing of the petition, and as it appears that no party in interest has directly questioned the validity of the order of adjudication, the court has reached the conclusion that this order should be treated as valid and not open to

collateral attack in this proceeding. Gilbertson v. United States, 168 Fed. 672, 94 C. C. A. 158; B. R. Electric Co. v. Ætna Insurance Co., 30 Am. Bankr. Rep. 424, 206 Fed. 885, 124 C. C. A. 545 (C. C. A. 8th); In re First National Bank, 152 Fed. 64, 81 C. C. A. 260, 11 Ann. Cas. 355; In re Dempster, 172 Fed. 353, 97 C. C. A. 51; In re Plymouth Cordage Co., 135 Fed. 1000, 68 C. C. A. 434.

For the reasons stated, the court concludes that the objections made to the jurisdiction of the District Court of the United States for the Southern District of Iowa are untenable, and that the adjudication of bankruptcy made in this case by that court must be treated as valid in the present proceedings.

[6] 2. Let us next consider whether the property of David H. Sage, doing business as the Sage Banking Company, is such property as, under the provisions of the Bankrupt Act, passed to his trustee in bankruptcy by virtue of the adjudication of bankruptcy. The Bankrupt Act provides (section 70):

"(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trade-marks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated and continue to hold, own, and carry such policy free from the claims of * * * creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets; and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

It has been held that while, under the provisions of section 70a of the Bankrupt Act, the title to the bankrupt's property vests in his trustee at the time he is adjudged a bankrupt, such title vests by relation as of the date of the filing of the petition in bankruptcy. State Bank v. Cox, 143 Fed. 91, 74 C. C. A. 285; Acme Harvester Co. v. Beekman, 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208. In the present aspect of the case the question presented for determination is whether the property of David H. Sage, doing business as the Sage Banking Company, is such property as prior to the filing of the petition in bankruptcy the bankrupt "could by any means have transferred or which might have been levied upon and sold under judicial process against him."

The business of banking is in Missouri, as in nearly all the other states, regulated by law. The Missouri statutes provide for two classes of banks, namely, incorporated banks and "private bankers." The bankrupt herein was a private banker. By section 1116, R. S. Mo. 1909:

"Private bankers are declared to be those who carry on the business of banking by receiving money on deposit, with or without interest, by buying and selling bills of exchange, promissory notes, gold or silver coin, bullion, uncurrent money, bonds or stocks, or other securities, and of loaning money, without being incorporated."

The principal provisions of the Missouri statutes regulating private bankers are these: No person, or persons, shall engage in the business of private banker without "a paid-up capital of not less than $10,000, * * * nor until he or they shall have made a statement, subscribed and sworn to as correct and true before a notary public by each person connected with such business as owner or partner, setting forth: (1) The name and places of residence of all persons interested in the business, all of whom shall be residents of this state, and the amount of capital invested; and (2) the name in which the business is to be conducted and the place at which it is to be carried on"; and the person or persons engaging in the business are required to acknowledge and record such statement in the office of the recorder of deeds in the county in which the bank is located, and file a certified copy thereof in the office of the bank commissioner (section 1117). The private banker is required to use the capital invested in his bank in the banking business, and not in general trade (section 1118); not to loan more than a specified percentage of his bank's capital and surplus to any one borrower (sections 1110, 1118); to maintain a specified cash reserve (section 1098); not to borrow himself from his bank more than 10 per cent. of the bank's paid-up capital and surplus (section 1087); not to withdraw the profits earned by the bank without making a prescribed provision for the accumulation and maintenance of a surplus (section 1118); to make certain reports to the bank commissioner (section 1119); to submit to periodical examinations by the bank commissioner, or one of his examiners (sections 1080, 1119); not to make a voluntary general assignment of its business and affairs, but in case he shall find his bank in a failing condition to place its affairs in the hands of the bank commissioner (section 1084).

The statutes of Missouri further provide (section 1084) that no attachment, injunction, or execution shall be issued against an incorporated or private bank before final judgment in any suit, action, or proceeding in any state, county, or municipal court. The statutes further provide (section 1081) that the bank commissioner shall require a private banker to make good any impairment of the capital of his bank, and authorize the bank commissioner to close the bank and take charge of its property when, from an examination, he finds the bank insolvent, or that its continuance in business will seriously jeopardize the safety of its depositors or other creditors. The statute also provides (section 1081) that, when the bank has been closed and taken charge of by the bank commissioner, he shall ascertain its actual financial condition, and if he is satisfied that it cannot resume business, or liquidate its indebtedness to the satisfaction of all its creditors, shall report its insolvency to the Attorney General, who shall institute proper proceedings to have a receiver appointed to wind up its affairs. It is further provided that the bank commissioner may appoint a special agent to

take charge of the affairs of an insolvent bank temporarily, until a receiver is appointed, such special agent not to remain in charge more than 60 days.

The Missouri statutes refer to one who is conducting a private bank as "proprietor or owner" (section 1087), and also as "individual banker" (sections 1095, 1098). The Missouri statutes seem to expressly recognize the right of the proprietor or proprietors of a private bank to dispose of it; section 1117 providing:

"That in order to accomplish a change in the ownership of a private bank, it shall be necessary for all the partners of the new bank to make, record and file in the office of the bank commissioner a statement in form and manner" as required in the case of the establishment of a new private bank.

Attention has already been called to the fact that the provisions of the Bankrupt Law operate to vest in the trustee in bankruptcy title to such property of the bankrupt as, prior to the filing of the petition in bankruptcy, "he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Putting aside for later discussion the legal effect to be given to the act of the bank commissioner in placing a special agent in charge of the bank, it seems clear that David H. Sage, the bankrupt, was the sole owner of the Bank of Alexandria, and of the property held by the bank, and that he could have transferred a valid title to the whole, or any portion, of the property held by the bank. Under the provisions of the Missouri statutes it seems also to be clear that the property held by the bank could have been levied upon and sold under an execution issued upon a final judgment against the bankrupt. The fact that a man is engaged in a business that is regulated by law and supervised by governmental authority does not, in contemplation of law, affect his title to or ownership of the property employed in such business. These considerations constrain the court to conclude that the property of the Sage Banking Company is such property as could have been transferred by the bankrupt and levied upon under an execution against him.

It is contended by respondents that under the provisions of the Missouri statutes the "Sage Banking Company" must be treated as an "entity" distinct from David H. Sage as an individual. In a certain sense the Missouri statutes do undoubtedly treat a private bank owned by an individual as an "entity" to be distinguished, for some purposes, from such individual; but this is very far from saying that these statutes make a private bank a legal entity having the attributes of a corporation, and being a juristic person distinct from the owner. Speaking generally, the person who carries on the business of a private banker is required by the Missouri law to provide a sum of money as capital for his bank, and as long as he continues in the business he is required to maintain this capital fund intact, and to conduct his bank under the restrictions, and subject to the supervision, imposed by law. The statutes require a separation of the property of a private banker used in his banking business from his other property, and while he continues to conduct his bank he is restricted in his right to use the bank's funds or property.

In respect of the required separation of the bank's property and business from the owner's property and business, we may say, if we choose, that the bank is recognized as an "entity" distinct from the owner as an individual; but this assertion will in no way aid us in resolving the legal questions involved in this case. Whether we choose to call a private bank an "entity" or not, it is certain that the Missouri statutes do not warrant us in treating such a bank as a corporation. Private bankers are defined by the statute as "those who carry on the business of banking * * * without being incorporated." The statutes throughout recognize the distinction between incorporated banks and "private bankers," and every provision of the statutes which have any bearing on the question negatives the view that a private bank is to be regarded in any sense as a corporation. Furthermore, the view that a private bank is a corporation, or quasi corporation, has been expressly repudiated in the only Missouri case dealing with the question which has been brought to the court's attention. Gupton v. Carr, 147 Mo. App. 105, 125 S. W. 849.

It is further contended by the respondents that the title to the property of the Bank of Alexandria did not pass to the trustee in bankruptcy of David H. Sage, because under the Bankrupt Act, as it now exists, a private banker cannot be adjudicated bankrupt. As David H. Sage was subject to be adjudicated a bankrupt as a "natural person," this question does not affect the validity of the order of adjudication; but, if we should conclude the private bankers, as such, cannot be adjudicated bankrupt, it would give weight to the contention here made that the property of the bank did not pass to the trustee herein. The contention that private bankers cannot now be adjudicated bankrupt is based upon the language of section 4 of the Bankrupt Act, and especially upon the change made in that section by the amendment of June 25, 1910. As originally enacted in 1898, section 4 of the Bankrupt Act was as follows:

"(a) Any person who owes debts, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt.

"(b) Any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudicated an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. Private bankers, but not national banks or banks incorporated under state or territorial laws, may be adjudged involuntary bankrupts."

In 1910 original section 4 was amended so as to read as follows:

"(a) Any person, except a municipal, railroad, insurance, or banking corporation, shall be entitled to the benefits of this act as a voluntary bankrupt.

"(b) Any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or by impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. The bankruptcy of a corporation shall not release its officers, directors, or stockholders, as such, from any liability under the laws of a state or territory or of the United States."

Bearing in mind that the word "person," as used in the Bankrupt Act, includes corporations and partnerships—section 1 (19), being Comp. St. 1913, § 9585—it will be observed that the general effect of the amendment of 1910 was to permit all corporations, with certain specified exceptions, to become voluntary bankrupts, and to greatly enlarge the classes of corporations subject to be adjudged involuntary bankrupts. Under the original act no corporation could become a voluntary bankrupt, but under the act as amended all corporations, except a "municipal, railroad, insurance, or banking corporation," can file voluntary petitions. Under the original act the only corporations subject to be adjudged involuntary bankrupts were those "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, owing debts to the amount of one thousand dollars or over." Under the amended act the classes of corporations liable to be adjudicated involuntary bankrupts are "any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation owing debts to the amount of one thousand dollars or over." The amendment of 1910 made no change in the law as regards "natural persons" and "unincorporated companies."

At all times since the original enactment of the statutes all natural persons owing debts may become voluntary bankrupts, and all natural persons, except wage-earners and persons engaged chiefly in farming or tillage of the soil, and all unincorporated companies, owing the requisite amount, have been subject to be adjudged involuntary bankrupts. By the amendment of 1910 the last sentence of clause "b" was dropped. The sentence so eliminated read:

"Private bankers, but not national banks, or banks incorporated under state or territorial laws, may be adjudged involuntary bankrupts."

It is contended that the elimination of the sentence and of any specific reference to private bankers has operated to exclude private bankers from liability to be adjudged involuntary bankrupts. A careful analysis of section 4 as originally enacted, and as amended, has led the court to conclude that this contention is erroneous for several reasons: (1) The original act clearly made private bankers liable to be adjudged involuntary bankrupts, independently of the final sentence of clause "b" referring specifically to "private bankers"; (2) in the amendment of 1910 clause "b" is substantially rewritten in such terms as to render the last sentence of clause "b" of the original act inapposite and superfluous; and (3) in the context in which it originally appeared the specific reference to "private bankers" added nothing to the force and meaning of the clause, and the words were evidently employed there ex industria, and were dropped in the amendment because superfluous.

As already pointed out, both under the original act and under the amendment of 1910 all "natural persons, except wage-earners and persons engaged chiefly in farming or tillage of the soil," and all "unincorporated companies," were liable to be adjudged involuntary bankrupts. If, therefore, a private banker is a "natural person" or an "unincorporated company," he has been liable to be adjudged an involuntary bankrupt at all times since the present Bankrupt Act has been in

force. If the private banker is to be regarded as a banking corporation under federal, state, or territorial laws, he is expressly excluded from being adjudicated a bankrupt by the original act, and also by the amended act, and it is, of course, clear from the context in the last sentence of original clause "b" that the "private banker" there referred to is not a bank incorporated under federal, state, or territorial laws.

It is clear that in the amended act "banking corporations" are *expressly excepted* from the voluntary provision of the act (clause "a"), because such banks would otherwise be embraced in the generic term "any person" which is there employed, and which by statutory definition includes corporations, natural persons, and partnerships. It is equally clear that "banking corporations" are *expressly excepted* from the involuntary provisions of the act (clause "b") because such corporations would otherwise be embraced in the generic classes "any moneyed business or commercial corporation" therein specified. In this context the *express exclusion* of *"banking corporations"* seems entirely inconsistent with the view that private or unincorporated banks stand on the same footing as incorporated banks, and that both are without the purview of section 4 of the act. In expressly excepting "banking corporations" from the generic classes of corporations enumerated in clause "b" of the amendment of 1910, and in failing to except private or unincorporated bankers from the generic classes of "natural persons" and "unincorporated companies" there specified it seems reasonably clear that Congress intended that natural persons and unincorporated companies engaged in banking should remain liable to be adjudged bankrupt.

Undoubtedly a general rule of statutory construction, if applicable here, would require us to conclude that the elimination of the term "private banker" by the amendment of 1910 has had the effect of excluding private bankers from the class of debtors now subject to be adjudged bankrupts; but this general canon of construction must be applied rationally, and the propriety of its application in any particular case can only be determined upon careful consideration of the entire context of both the original and amended statutes. If the terms employed in original section 4 are to be given their plain, ordinary, and usual meaning, they certainly embrace natural persons and unincorporated companies doing business as private bankers, independently of the express reference to "private bankers" contained in the last sentence of that section. As the amendment of 1910 made no change in the broad and comprehensive terms used, we are obliged to conclude that natural persons and unincorporated companies engaged in business as private bankers remain liable to be adjudged bankrupt.

It seems impossible to reach any other conclusion without doing violence to the language of the act as amended and overstepping the legitimate boundaries of construction. Rules of construction are designed to aid us in interpreting language of doubtful or ambiguous import, and where the language employed is clear and unequivocal such rules can have no application. These considerations constrain the court to conclude that private bankers can be adjudged involuntary bankrupts under the act as now in force.

[7] 3. It is further contended that the respondent receiver is an "adverse claimant" within the meaning of the Bankrupt Law, and that this court is therefore without jurisdiction to compel him by summary order to deliver the property in his custody to the petitioner. This contention is untenable, because the basis of the respondent receiver's possession of and dominion over the property in controversy is the order of the circuit court of Clark county appointing him receiver and directing him to take possession of the property. As the suit in which the receiver was appointed was not instituted until after the petition in bankruptcy was filed, and after the jurisdiction of the court of bankruptcy had attached, it is clear that no order made by the circuit court of Clark county could operate to render its receiver an adverse claimant. Acme Harvester Co. v. Beekman, supra; State Bank v. Cox, supra.

It is said that, as a special agent appointed by the bank commissioner was in charge of the bank when the petition in bankruptcy was filed, the property of the bank must be treated as then held adversely, and that the subsequent appointment of a receiver only operated to continue such adverse possession. It seems clear that the special agent to the bank commissioner was a mere temporary custodian of the bank's property, having no beneficial title to or claim upon such property, and it is difficult to see how he could be treated as an adverse claimant, or how his previous possession could in any way strengthen the claim of the receiver who was afterwards appointed.

It is also suggested on behalf of respondents that the action taken by the bank commissioner in taking charge of the bank, placing a special agent in charge, and afterwards having a receiver appointed and put in charge, must be treated as having placed the bank's property in custodia legis from the time the bank commissioner first took charge. As neither the bank commissioner nor his special agent was vested with or could exercise any judicial power, it is difficult to see how this view can be successfully maintained.

There is a more fundamental reason why the action taken by the bank commissioner and the appointment of a receiver by the circuit court of Clark county cannot operate to deprive the petitioner of his right to administer the assets of this bank. As the Bankrupt Act confers upon courts of bankruptcy jurisdiction to adjudge private bankers bankrupt and to administer their property, this jurisdiction is not only paramount, but is exclusive, and state laws assuming to confer upon state officers or courts authority to administer the property of such bank are superseded and must give way when the Bankrupt Law is properly invoked. In re Salmon (D. C.) 143 Fed. 395; Sturges v. Crowinshield, 4 Wheat. 122, 4 L. Ed. 529; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Baldwin v. Hale, 1 Wall. 223, 17 L. Ed. 531; Carling v. Lumber Co., 113 Fed. 483, 51 C. C. A. 1; 1 Remington on Bankruptcy, § 1628, and cases.

Under the doctrine just stated the administration under state insolvent laws can be superseded by the institution of bankruptcy proceedings, providing the bankruptcy proceedings are commenced at any time within four months after the commencement of proceedings under

the state insolvency laws. 1 Remington on Bankruptcy, §§ 1625, 1626, and cases; Bankrupt Act, § 3a (4), being Comp. St. 1913, § 9587. That statutes of Missouri governing the administration of insolvent private banks are insolvent laws within the meaning of the doctrine above stated seems to admit of little doubt, and it has been so determined in the case of In re Salmon (D. C.) 143 Fed. 395.

[8] It is finally contended that this court ought not now to act upon the petition presented, but should await the action of the Supreme Court of Missouri upon the appeal now pending in that court. If the Supreme Court of Missouri could render an authoritative judgment in the pending case, and if this court was vested with discretion to delay action upon the present petition until the Supreme Court of Missouri makes its decision, this court would be glad to await the action of the latter court; but this court is of opinion that the Supreme Court of Missouri has no jurisdiction to decide the present controversy, and that this court has jurisdiction, and that it cannot properly refuse to exercise its jurisdiction. United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055.

This court as a matter of comity required the petitioner to first apply to the circuit court of Clark county for an order directing its receiver to turn the property in controversy over to him. This application was made, and the circuit court of Clark county made an order substantially as asked. But the petitioner has not obtained the property he seeks, and the order of the circuit court of Clark county has been rendered ineffectual by the action of the respondents herein, who took an appeal from such order.

For the reasons already pointed out, the court is of opinion that the petitioner is entitled to the property in controversy, and that the duty of this court to award him the property is not affected by the action of the respondents in taking an appeal from the order of the state court. It is well settled that, where a trustee in bankruptcy is entitled to the possession of property in the possession of a receiver appointed by a state court, the court of bankruptcy will, if necessary, by its own order direct and compel such receiver to deliver such property to the trustee. In re Hecox, 164 Fed. 823, 90 C. C. A. 627; Hooks v. Aldridge, 145 Fed. 865, 76 C. C. A. 409; In re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933. Such an order can be properly made, notwithstanding that the state court has previously denied an application of the trustee in bankruptcy addressed direct to it. In re Hecox, supra; Hooks v. Aldridge, supra.

In this case this court is of opinion that the circuit court of Clark county made an inadvertent error in directing its receiver to retain the sum of $1,600 to cover fees and costs. As the circuit court of Clark county had no jurisdiction over the property in the possession of its receiver, it had no authority to dispose of any portion of such property or its proceeds. If any expenses have been incurred, or any services rendered in the care and preservation of the property, they will, no doubt, be allowed by the United States District Court for the Southern District of Iowa, which court alone has jurisdiction to impose charges upon this property.

In conclusion, the court desires to say that it has not discussed in this opinion the question of whether or not the property of the Bank of Alexandria must be treated as a trust fund for the benefit of the depositors and other creditors of the bank, as that question is deemed one of substantive law, not directly involved in the present proceedings. This question will be determined by the court of primary jurisdiction, the District Court of the United States for the Southern District of Iowa.

In accordance with the foregoing views, an order will be entered directing the respondent, McDermott Turner, to forthwith turn over to the petitioner herein all the money, property, and effects in his possession of David H. Sage, doing business as the Sage Banking Company